UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

ALBERTO GONZALEZ,

               Petitioner,                12 Civ. 6910

  -against-                                   OPINION

WARDEN OF MCC NEW YORK,

               Respondent.

------------------------------------------X

A P P E A R A N C E S:

    Attorneys for Petitioner

    74-09 37th, Suite 309
    Jackson Heights, NY 11372
    By:  Alberto Gonzalez, Esq.

    Attorneys for Respondent

    PREET BHARARA
    United States Attorney for the
    Southern District of New York
    86 Chambers Street
    New York, New York 10007
    By:  Arlo Devlin-Brown, Esq.

**Sweet, D.J.**

Alberto Gonzalez ("Gonzalez" or the "Petitioner") filed a petition seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 to challenge the legality of his sentence entered on June 18, 2004, by the Honorable Gerald E. Lynch in the Southern District of New York, sentencing him, pursuant to a plea agreement, of a sentence of 235 months' imprisonment.

Based upon the conclusions set forth below, the petition is denied.

**The Facts & Prior Proceedings**

The facts underlying this action are set out in the Petitioner's petition and in the June 27, 2007 opinion of the district court denying the Petitioner's motion under 28 U.S.C. § 2255. See Gonzalez v. United States, Nos. 06-CIV-14431(GEL), 02-CR-877(GEL), 2007 WL 1856625 (S.D.N.Y. June 27, 2007) (the "June 27 Opinion"). The facts relevant to the instant motion are set forth in below.

On May 2, 2003, Gonzalez pled guilty, pursuant to a

plea agreement, to one count of conspiracy to import into the United States one kilogram and more of heroin and five kilograms and more of cocaine, in violation of 21 U.S.C. § 963, one count of conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin and five kilograms and more of cocaine, in violation of 21 U.S.C. § 846, and one count of conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin in violation of 21 U.S.C. § 846.

The plea agreement stipulated certain facts between the Government and Gonzalez, including the grouping of the three counts pursuant to § 3D1.2, as the offense level was determined largely on the basis of the total amount of drugs involved in the offense conduct, and Gonzalez's total criminal history points. Gonzalez's criminal history points comprised of one criminal history point as a result of a plea of guilty for driving under the influence of alcohol, pursuant to U.S.S.G. § 4A1.1(c), three criminal history points for a guilty plea for reckless endangerment in the second degree and attempted criminal possession of a controlled substance in the second degree, pursuant to U.S.S.G. § 4A1.1(a), and three criminal history points for the three counts he pled guilty to on May 2,

2003, pursuant to U.S.S.G. § 4A1.1(d) and (e). (See Government Memo. in Opp. Ex. A).

Based on his 7 total criminal history points, Gonzalez's applicable Sentencing Guidelines range was 188 to 235 months' imprisonment. (Id.). The plea agreement additionally provided that the "parties agree that neither a downward nor an upward departure from the stipulated Sentencing Guidelines range of 188 to 235 months' imprisonment is warranted." (Id.). Gonzalez further agreed that he would "not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the stipulated Sentencing Guidelines range of 188 to 235 months' imprisonment." (Id.).

As discussed in the June 27 Opinion, at the time of his plea, Gonzalez stated that he had a tumor "under my brain outside my brains[,]" but that this condition did not affect his "ability to understand or to make decisions." June 27 Opinion, at *1. "Defense counsel stated that he had no doubt of defendant's competence to plead, and the Court found it 'very clear . . . from his demeanor and his answer to my questions that Mr. Gonzalez is thoughtful, intelligent and [ ] aware of

4

what is going on.'" Id. The Court also "fully explained to the defendant his constitutional rights (which had already been presented in a written document that defendant read and signed), the charges of the indictment, the elements of those charges, and the sentencing consequences of each and all; and the sentencing terms of the plea agreement Gonzalez had entered with the Government. Gonzalez affirmatively stated that he understood each item[.]" Id.

As to his sentencing, the Court explained,

> "that while the agreement limited the rights of the Government and the defendant, it did not bind the Court, which was 'required to make [its] own independent calculation under the sentencing guidelines.' Having previously advised defendant that the maximum sentence was life imprisonment the Court emphasized that 'no one . . . can be sure what your sentence will be" until the sentencing date, when the Court had "decided, first, what is the correct calculation of the sentencing guidelines and, second, whether there is any basis for departing up or down from that range.' The Court warned defendant, and he acknowledged that he understood, 'even if your sentence is different from what your attorney or anyone else has predicted, [and] even if it is different from what you expect, once you [have] pleaded guilty, you will not be allowed to withdraw your plea.'"

Id. (internal citations omitted).

In addition to explaining the terms of the written plea agreement, the Court specifically asked Gonzalez whether the written agreement constituted "the entire agreement between you and the government concerning your plea and sentence," to which Gonzalez unhesitatingly answered, "yes." To be certain that the response was not simply acquiescence in a leading question, the Court rephrased the question in another way, asking, "is there any agreement between you and the government that has been left out of the writing or any side deal or promise where somebody says here is the real deal but we didn't put it in writing." Gonzalez equally firmly answered, "no," denying that there was "anything like that." Id. at *2 (internal citations omitted).

As to Gonzalez's prior representation, Judge Lynch noted:

> Sanford N. Talkin, Esq., Gonzalez's original attorney, avers that the plea negotiations were primarily addressed to Gonzalez's unsuccessful efforts to cooperate with the Government. (Talkin.Aff. ¶¶ 4-8.) He refers to no "original deal of 14[ ] years," as claimed by Gonzalez. (Pet. Mem. at 14.) Instead, he simply relates that, after the failure of Gonzalez's efforts to cooperate, he "negotiated a plea agreement with the government" that called for "a sentencing range of 188-235 months." (Talkin Aff. ¶ 9.) Talkin further states that, despite being advised by Gonzalez of his claim to have a brain tumor, he "never viewed any documentation" of such a problem and "never

6

observed any health problem" on Gonzalez's part "that [a]ffected his ability to comprehend his case, options, or circumstances." (Id. ¶ 13.)

Talkin's successor, Barry E. Schulman, Esq., met with Gonzalez "several times" after his plea in connection with Gonzalez's desire to retain Schulman to represent him at sentencing (Schulman Aff. ¶ 4):

During these meetings Mr. Gonzalez and I discussed at length the nature of the case and the plea agreement which he had signed. At all times it appeared to counsel that Mr. Gonzalez comprehended the exposure that the plea agreement contemplated. At no time did Mr. Gonzalez ever refer to a promise of fourteen years[,] and nothing in the plea agreement seemed to indicate that that would be the limit of his exposure.

Id.

On June 18, 2004, Judge Lynch sentenced Gonzalez to 235 months' imprisonment, the top of the applicable Guidelines range, to be served concurrently with a sentence previously imposed by the state of New York.

Thereafter, on July 9, 2004, Gonzalez filed a notice of appeal pro se. On August 26, 2005 the Second Circuit Court of Appeals dismissed the appeal because Gonzalez had knowingly and voluntarily waived his right to appeal.

Following the direct appeal, Gonzalez filed a motion with the district court pursuant to 28 U.S.C. § 2255 to vacate

or set aside the conviction, alleging among other things that his plea was not knowing and voluntary, that he was denied effective assistance of counsel, and that his Guidelines sentence was unlawful. On June 27, 2007 Judge Lynch denied the habeas petition, rejecting each of Gonzalez's claims. First, Judge Lynch dismissed as "fanciful" Gonzalez's claim that his plea was not knowing and voluntary, referring to Gonzalez's prior sworn testimony and statements by his prior attorneys. See June 27 Opinion at **1-3. Judge Lynch also rejected claims that the two prior attorneys were ineffective for various reasons, including alleged failures to investigate the case, obtain better results in plea discussions, and make certain arguments on direct appeal. Id. at **3-4. Finally, Judge Lynch wrote that although Gonzalez's challenge to his sentence under the then-mandatory Guidelines could not be made collaterally, "[t]here is manifestly no way that the sentence would have been different under the Booker regime" having been "selected by the Court as necessary, in light of all the facts and circumstances, to accomplish the purpose of sentencing." Id. at *4. Gonzalez's motion for a certificate of appealability was denied by the district court, and that denial was affirmed by the Second Circuit.

Gonzalez also filed a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to set aside the judgment in the original criminal case. In his motion, Gonzalez claimed that the original sentence was the product of "a fraud upon the court" because factual stipulations in the plea agreement were allegedly false and yet his attorneys, both in the district court and on appeal, allegedly told him to plead guilty anyway and "never to bring this matter up on direct appeal or collateral review." See Gonzalez v. United States, Nos. 06-CIV-14431(GEL), 02-CR-877, 2008 WL 217100, at *1 (S.D.N.Y. Jan. 16, 2008). Judge Lynch rejected the application, noting that Gonzalez was essentially seeking to bring a second habeas petition under the guise of Rule 60(b) and finding the claims in any event unfounded. Id.

Gonzalez, currently an inmate at the Federal Bureau of Prisons' Coleman, Florida facility, brings the instant petition for habeas corpus under 28 U.S.C. § 2241.

**Discussion**

"A § 2241 petition generally challenges the execution of a federal prisoner's sentence, whereas challenges to the

9

underlying conviction and sentence are properly raised in a § 2255 petition." Grullon v. Ashcroft, 374 F.3d 137, 139 (2d Cir. 2004). Challenges to the execution of a sentence typically include "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001).

Jurisdiction over a § 2241 petition lies with the court "having jurisdiction over the custodian" overseeing the defendant's detention. Rumsfeld v. Padilla, 542 U.S. 426, 442, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004). The proper respondent in a habeas challenge to present physical confinement generally is the person with physical custody of the detainee - e.g., the warden of the facility where the detainee is held - not a remote official. Id. at 434-35; Gordon v. Lappin, No. 07-CIV-10948, 2008 WL 4179233, at *2 (S.D.N.Y. Sept. 10, 2008).

The Petitioner here is incarcerated in Coleman, Florida, not the Southern District of New York. Thus, the appropriate respondent is the warden of that facility, not the warden of the Metropolitan Correctional Center (the "MCC") as

10

named here, and the appropriate jurisdiction is the Middle District of Florida.  However, the Government has chosen to waive this jurisdictional objection in order to conserve Governmental and judicial resources.  (See Government Memo. in Opp. at 3-4) (citing Rumsfeld, 542 U.S. 456) (Kennedy, J., concurring) ("Because the immediate-custodian and territorial-jurisdiction rules are like personal jurisdiction or venue rules, objections to the filing of petitions based on those grounds can be waived by the Government.").

Instead, the Government submits that the petition should be denied because the Petitioner specifically waived his right to collaterally attack his sentence under § 2255 or 2241, and that notwithstanding the waiver provision of the plea agreement, the Petitioner has continued to appeal or collaterally attack his sentence through various litigation over the past seven years.  The Government also contends that even if the Court were to consider the § 2241 petition notwithstanding the prior waiver, the petition should be construed as a second and successive § 2255 petition because the allegations raised in it are not cognizable under 28 U.S.C. § 2241.

The Petitioner, on the other hand, contends that his

11

petition under 28 U.S.C. § 2241 is the only avenue of relief available to him for a claim of ineffective assistance of counsel, as a motion under 28 U.S.C. 2255 would be "inadequate and ineffective" for him. (Petition ¶ 15). He alleges that he received ineffective assistant of counsel at the time he entered a plea of guilty and sentence, as both of his previous attorneys failed to argue against the use of a Driving While Intoxicated ("DWI") by alcohol conviction as part of Petitioner's criminal history points. Petitioner maintains that he is innocent of the DWI conviction, as he was never charged or convicted of the charge, and that the inclusion of the charge placed him within a sentencing range of 188 to 235 months. (Id. ¶¶ 16, 24, 25). Petitioner contends that he should have been placed in a lower sentencing range and that as such, his sentence must be set aside and a new resentencing hearing must be granted. (Id. ¶¶ 26-29).

The Second Circuit has "repeatedly upheld the validity of appeal waivers if they are knowingly, voluntarily, and competently provided by the defendant." United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011) (internal quotation marks and brackets omitted); see also United States v. Haynes, 412 F.3d 37, 39 (2d Cir. 2005) ("[A]ppeal waivers are applicable to

issues arising subsequent to the plea agreement, including issues created by new judicial decisions."); Tremblay v. United States, No. 08-CIV-7030, 2009 WL 1055007, at *8 (S.D.N.Y. Apr. 20, 2009) ("When a defendant signs a plea agreement containing a waiver of the right to file a habeas petition, the waiver is enforceable provided that the plea agreement was 'entered into knowingly and voluntarily, and with awareness of his waiver of . . . collateral attack.'").

While "there is no general bar to a waiver of collateral attack rights in a plea agreement[,]" "a waiver of appellate or collateral attack rights does not foreclose an attack on the validity of process by which the waiver has been procured." Frederick v. Warden, Lewisburg Correctional Facility, 208 F.3d 192, 195-96 (2d Cir. 2002). These exceptions are "very limited" and "include situations:

> when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence . . . ."

Garafola v. United States, --- F. Supp. 2d ----, 2012 WL 6622684, at **6-7 (S.D.N.Y. Dec. 20, 2012) (citing to United

13

States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000)).

"In challenging the ineffectiveness of counsel in connection with a plea agreement, a defendant is challenging the constitutionality of the process by which he waived his right to appeal." Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (citation omitted). Thus, "[a]n ineffective assistance of counsel claim survives the guilty plea or the appeal waiver only where the claim concerns the advice [the defendant] received from counsel . . . by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct." Id. at 138-39. The Second Circuit stated that, "[o]therwise, it a purported failure to enhance the defendant's case were sufficient by itself to overcome an appeal waiver, many ineffective assistance claims would be cognizable despite the guilty plea and notwithstanding the waiver." Id. at 139.

Here, Petitioner contends that his previous counsel performed deficiently for "failing to object to the prosecution and the pre-sentencing report's computation, adding . . . one additional criminal history point for the driving while impaired conviction." (Pet. Memo. ¶ 24). Petitioner states that both of his attorneys "failed to recognize that [he] was not charged or

14

convicted of a criminal offense during his 1998 driving while impaired sentence[,]" nor that "it was not a felony, and not automatically subject to inclusion in Mr. Gonzalez's criminal history." (Id.). However, Petitioner presents no facts to support a showing that Gonzalez's prior attorneys gave <u>any advice</u> which may have affected the knowing and voluntary nature of Gonzalez's decision to waive his right to bring a Section 2255 and 2241 motion.

Moreover, Judge Lynch previously found that "Gonzalez chose to plead guilty knowingly and voluntarily, and with a correct understanding of his rights, the charges, the consequences of his plead, and the terms of the plea agreement." <u>The June 27 Opinion</u>, at *3. The Court stated that "[n]othing in the petition cases any doubt on the Court's finding at the conclusion of allocution that Gonzalez was competent to enter a guilty pleas and understood the consequences of his plea." <u>Id.</u> In particular, as part of the plea allocution, the Court specifically inquired and the Petitioner affirmed that he was aware of the waiver. Thus, the Court concluded that Gonzalez "has provided no basis for undoing [his] choice." <u>Id.</u>

Judge Lynch also already found that the Petitioner's

15

claim of ineffective assistance of counsel was meritless and even "frivolous." Id at **3-4 (holding that "[t]here was thus no possibility that the waiver could be invalidated on any basis suggested by Gonzalez in his petition."). Petitioner's arguments fail to present any additional bases for his claim of ineffective assistance of counsel. Accordingly, and in light of these prior findings, Petitioner cannot now assert his claims in the instant petition, having waived them knowingly and voluntarily. See Garafola, 2012 WL 6622684, at *7 (finding persuasive a determination by the previous presiding judge that the plea was knowing and voluntary.).

Finally, even if Petitioner succeeded in challenging his plea waiver, the allegations raised in this petition are not cognizable under 28 U.S.C. § 2241 and thus the petition would be construed as a second and successive § 2255 petition. The instant petition does not in any fashion challenge the execution of the sentence, asserting instead that the defendant was deprived of ineffective assistance of counsel just as the defendant asserted in his prior § 2255 petition.

The Second Circuit has held that a defendant can use § 2241 to bring claims normally actionable only through a § 2255

16

petition only where the "relief is procedurally unavailable under § 2255" and where the application "assert[s] a claim of actual innocence that (a) is provable on the existing record" and (b) "could not have effectively been raised at an earlier time." Poindexter v. Nash, 333 F.3d 372, 378 (2d Cir. 2003) (internal quotations omitted). As a "general rule," when collaterally attacking a sentence on the ground that he was convicted in violation of the Constitution or federal law, "a federal prisoner must use § 2255." Triestman v. United States, 124 F.3d 361, 373 (2d Cir. 1997); see also Jiminian, 245 F.3d at 146-47 ("§ 2255 is generally the proper vehicle for a federal prisoner's challenge to his conviction and sentence").

Here, Petitioner characterizes that he provides a claim of actual innocence, because he is not guilty of the criminal charge of a DWI but instead of a traffic violation. However, he does not dispute that he is guilty of the charged narcotics offenses but is instead arguing only that his lawyers were ineffective in failing to make a sentencing argument relating to the appropriate treatment of a prior conviction in connection with Guidelines calculations. See Poindexter, 333 F.3d at 382 (legal argument about treatment of prior convictions for Guidelines purposes is not a claim of "actual innocence").

Additionally, Petitioner makes no showing that the claim "could not have effectively been raised at an earlier time," such as direct appeal as a pure sentencing argument, or in the original § 2255 alleging ineffective assistance.

When presented with a § 2241 petition raising claims appropriately the subject of a previous § 2255 motion, "the district court can treat the § 2241 petition as a second or successive § 2255 petition and refer the petition to this Court for certification, or, if it is plain from the petition" that the petitioner cannot meet the above standard "dismiss the § 2241 petition for lack of jurisdiction." Adams v. United States, 372 F.3d 132, 136 (2d Cir. 2004). While it is commendable that the Petitioner has evidenced recent rehabilitation during his incarceration, it is plain from his petition that he cannot meet the appropriate standard and the instant petition is dismissed.

## Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus is denied.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; see also United States v. Perez, 129 F.3d 255 (2d Cir. 1997); Lozada v. United States, 107 F.3d 1011 (2d Cir. 1997). Pursuant to 28 U.S.C. § 1915(a)(3), it is hereby certified that any appeal from this order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

It is so ordered.

**New York, NY**
**January /0, 2013**

_____
ROBERT W. SWEET
U.S.D.J.